# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 09 C 50042 | DATE | 2/10/2011 |
| CASE TITLE | U.S.A. vs. Eddie Lee | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court denies the § 2255 motion, denies the request for an evidentiary hearing, and dismisses this cause in its entirety.

*Philip G. Reinhard*

■ [ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Eddie Lee, a federal prisoner, who is represented by counsel, filed an amended motion pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence for violating 18 U.S.C. § 922(g)(1). The amended motion raises the following claims based on the ineffectiveness of trial counsel: (1) trial counsel failed to interview and call certain defense witnesses; (2) trial counsel failed to retain a competent gunshot residue expert; and (3) trial counsel failed to retain a competent fingerprint expert. The government filed a response, and Lee filed a reply.

**Background**

On April 18, 2004, at around 9:00 pm, the Rockford Police Department received a report of gunshots and that a White Ford Taurus was involved. On April 19, 2004, at about 2:23 am, Rockford police officers received a radio report that shots were fired in their vicinity and that a White Ford Taurus was involved. A few minutes later they observed a White Ford Taurus that was stopping in a residential area.

Upon the vehicle stopping, its driver (Corey Francis) exited with a gun in his hand and fled on foot. Lee exited the passenger's side of the Taurus. When ordered to turn around, Lee was observed holding a white "do-rag" in one of his hands. Lee then complied with an order to lie down on the ground. At about this time, the officer with Lee saw Francis run from behind a nearby house so he handcuffed Lee, locked him in the squad car, and pursued Francis on foot.

Another Rockford officer arrived a few minutes later. She observed a white do-rag on the ground near the Taurus but did not notice a firearm under the do-rag.

After Francis was apprehended, the officer who first took Lee into custody returned to the location of the Taurus. At that time he reached down to retrieve the do-rag and observed a handgun on the ground partially covered by the do-rag. Both the gun and the do-rag were in the same location where he had earlier ordered Lee to lie down. The officer had not searched Lee or the surrounding area prior to placing him in the squad car.

Additional evidence at trial established that there was gunshot residue on the cuff of the jacket Lee

was wearing when arrested. The government's gunshot residue expert admitted on cross-examination that the residue could have come from such sources as the interior of the Taurus, the handcuffs used on Lee, the clothing bag in which the jacket was placed at the jail, or being near someone else who fired a gun.

The government also presented testimony of a fingerprint expert, Stephanie Bodine, that a latent partial fingerprint was found on the handgun. According to Bodine, the print was not that of Francis. She further testified that due to the condition of the print she could not positively identify it as coming from Lee although she could not eliminate Lee as the source of the print. She also testified that the print could have been made by the officers who handled the gun as well as millions of other people who possessed similar fingerprint characteristics.

The government also called Neshieka Foat, Lee's girlfriend. She testified that she lived nearby where the arrest took place. When she exited her residence she did not see anyone else in the area where the gun and the do-rag were found between the time Lee was placed in the squad car and the time the gun was found. Foat also testified that she received a letter from Lee while he was awaiting trial in which he asked her to find people who would falsely testify that they had seen an individual other than Lee throw a gun on the ground in the same location where the gun and the do-rag were located.

Lee's defense at trial was that the recovered handgun did not belong to him and that he was in the wrong place at the wrong time. According to Lee, who testified, he had only known Francis a few minutes before his arrest and had asked for a ride through a mutual acquaintance. Lee testified that Francis started to panic when he saw the police and Lee asked him to pull over so he could exit the car. Lee denied holding a do-rag in his hand or that he had a gun when he exited the Taurus. Lee also admitted to writing the letter to Foat regarding the false witnesses.

The jury returned a guilty verdict, and Lee was sentenced to 120 months' imprisonment. Lee then filed a direct appeal.

**Direct Appeal**

In his direct appeal, Lee raised the following issues: (1) this court erred in barring testimony regarding two shooting incidents that occurred prior to his arrest; (2) this court erred in permitting the gunshot residue expert to testify when the government failed to maintain a proper chain of custody regarding Lee's jacket; (3) this court erred in barring Lee's proposed expert witness from testifying as a gunshot residue or fingerprint expert; (4) this court erred in permitting the government's fingerprint expert to testify; (5) this court erred in limiting the cross-examination of the government's fingerprint expert; and (6) the government failed to establish any nexus between the charged offense and interstate commerce. See United States v. Lee, 502 F. 3d 691 (7th Cir. 2007).

As to the issue of the evidence of the prior shootings involving the Taurus, the Court of Appeals agreed that evidence that the Taurus was involved in one or more of the shootings that occurred on April 18 or 19 and that Lee was not present would show that it was less probable that Lee possessed a gun, fired a gun, or was present when a gun was fired on the morning of his arrest. However, as the Court of Appeals explained, the testimony of the shooting victims that Lee sought to introduce would not have established that Lee was not involved in those prior incidents. Lee, 502 F. 3d at 696. The Court of Appeals held that the proposed evidence of the prior shootings was not relevant to whether Lee possessed a firearm at the time he exited the Taurus. Lee, 502 F. 3d at 696.

The Court of Appeals further held, in addressing the relevance of the prior shootings evidence to the issue of whether the gunshot residue on Lee's jacket may have come from the inside of the Taurus as opposed to from possessing a gun, that "any error" was harmless based on Lee's having been able to elicit from the government's expert several possible sources for the gunshot residue other than Lee actually possessing a gun. Lee, 502 F. 3d at 696-97. The gunshot expert admitted on cross-examination that he could not say for certain that Lee fired a gun and that the gunshot residue could have come from the inside of the Taurus, from Lee being close to someone else who fired a gun, from residue in a clothing bag at the jail, or from handcuffs

that had been previously exposed to gunshot residue. Lee, 502 F. 3d at 697.

The Court of Appeals further stated in its harmless error analysis that there was "substantial evidence" establishing Lee's guilt. Lee, 502 F. 3d at 697. This evidence included Officer Garnhart's testimony that Lee exited the Taurus holding a white do-rag, that the gun was found under the do-rag in the same area where Lee was lying on the ground, that Foat testified she had not seen anyone in the area where the do-rag and gun were located, and that Lee's credibility was "substantially impacted" when he admitted he asked Foat to locate witnesses to testify falsely that they saw someone else drop the gun. Lee, 502 F. 3d at 697.

Further, the Court of Appeals rejected Lee's claim that this court erred in allowing the testimony of Bodine. The Court of Appeals agreed with this court that the fact that Francis had been eliminated as the person who left the print on the gun was relevant. Lee, 502 F. 3d at 699. The Court of Appeals also rejected Lee's argument that this court erred in refusing to allow the comparison of the prints of the officers involved with the latent print on the gun. Lee, 502 F. 3d at 699 n.1.

The Court of Appeals also affirmed this court's refusal to allow Lee to cross-examine Bodine regarding her having consulted with other fingerprint experts in her laboratory. Lee, 502 F. 3d at 699. In doing so, the Court of Appeals concluded that any error in denying cross-examination did not warrant reversal because Bodine explained to the jury that the latent print on the gun could have been left by Lee, the officers who handled the gun, or "millions of other individuals" with similar fingerprint characteristics. Lee, 502 F. 3d at 700.

**Applicable Legal Standard**

In order to establish ineffective assistance of trial counsel, a petitioner must establish that: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered resulting prejudice. Gentry v. Sevier, 596 F. 3d 838, 851 (7th Cir. 2010). Regarding performance, a petitioner must overcome a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Gentry, 596 F. 3d at 851. In order to establish sufficient prejudice from counsel's unprofessional errors, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Gentry, 596 F. 3d at 851.

**Claims Analysis**

1.) Failure to interview and call defense witnesses

This claim fails for the primary reason that this court prohibited trial counsel from introducing the witnesses that Lee now asserts trial counsel was ineffective for failing to interview and call. This ruling was affirmed by the Court of Appeals. Thus, trial counsel was not ineffective for failing to do something that he was barred from doing by this court at trial. To the extent Lee's claim is based on the failure to interview these witnesses, that claim also fails as no prejudice resulted in light of this court's ruling at trial that these witnesses were not proper.

Further, trial counsel considered the introduction of evidence related to the prior shooting incidents involving a white Taurus to be a questionable trial tactic as it would have introduced to the jury the possibility that Lee was involved in the prior shootings which would have prejudiced him in the eyes of the jury. This was sound trial strategy considering the weakness of the proposed testimony that would not have precluded Lee from being in the Taurus.

Moreover, because there was "substantial evidence" of Lee's guilt, combined with the weakness of the proposed testimony, any error was not so prejudicial as to have changed the outcome of the trial. Accordingly, this claim lacks merit.

The same can be said as to trial counsel's failure to interview and call other witnesses to testify that the Taurus had been loaned to Francis earlier in the day and that Lee had not been with Francis prior to his receiving a ride after the party on April 19. It was simply not prejudicial to have failed to call witnesses that

would not have offered any testimony tending to show that Lee did not possess a gun at the time he was stopped by the police. Therefore, this claim also fails to support any relief under § 2255.

2.) Failure to retain a competent gunshot residue expert

This claim may be disposed of based on the prejudice prong of the ineffective assistance of counsel analysis. Lee contends that had his counsel called a competent gunshot residue expert such expert would have testified that there were alternative sources of the gunshot residue found on the cuff of the jacket Lee was wearing at the time he was arrested. This argument fails to recognize that during cross-examination the government's expert admitted that it was possible that the gunshot residue could have been transferred to Lee's jacket from sources other than possessing or firing a gun such as the interior of the Taurus, the handcuffs, the clothing bag at the jail, or if Lee had been near someone else who had fired a gun. The failure to have a defense expert testify essentially to the same effect, in light of the other substantial evidence, was not prejudicial in this case. Thus, this claim fails as well.

3.) Failure to retain a competent fingerprint expert

Lee claims that his trial counsel was ineffective for failing to retain a competent fingerprint expert to testify that the latent print on the gun was not suitable for identification purposes and only questionable as a basis to exclude Francis but not Lee. This claim also fails for lack of prejudice. The government's fingerprint expert, Bodine, conceded on cross-examination that the number of people, including Lee, that could not be eliminated as the person who left the print on the gun was in the millions. She also testified that the print was not suitable for identification. This, combined with the substantial evidence of Lee's guilt, renders any error by trial counsel non-prejudicial. Here, there is not a reasonable probability that, but for trial counsel's unprofessional errors, the result of the trial would have been different. See Gentry, 596 F. 3d at 851. Accordingly, this claim fails to justify relief under § 2255.[1]

For the forgoing reasons, the court denies the § 2255 motion as to all claims, denies the request for an evidentiary hearing, and dismisses this cause in its entirety.

---

1. To the extent Lee argues that trial counsel's failure to call a competent fingerprint or gunshot residue expert hampered his ability to prepare for trial, such an argument fails as it is speculative, non-developed, and non-prejudicial.